# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ALLMARAS, et al., )<br>        Plaintiffs, )<br>vs. )<br>ALLMARAS, et al., )<br>        Defendants. ) | 2:05-CV-1188-RCJ-RJJ<br><br>**ORDER** |

This case arises out of a claim for life insurance benefits. On March 17, 2000, John Hancock issued a MarketPlace Level Term Life Insurance Policy, which provided benefits to Sandra Allmaras in case of Steven Allmaras' death. On May 25, 2004, Steven Allmaras was beaten to death at his home, leaving behind his wife Sandra and three surviving minor children. During the ensuing months, Sandra filed insurance benefit claims with various insurance companies, including John Hancock Life Insurance Company ("John Hancock" or "Defendant"), to collect for the loss of her husband. Sandra Allmaras made a claim for benefits under the John Hancock policy on June 8, 2004 and was paid a little over a year later on June 16, 2005.

Some time after making the insurance claims, Steven's surviving siblings and mother ("Plaintiffs") filed an action alleging that Sandra "willfully, intentionally, and with malice," arranged and conspired with another for the murder of the decedent. The Complaint also

brought causes of action against five insurance companies, including John Hancock, seeking to enjoin or recover payment of various life insurance policies paid to Sandra. John Hancock moved for summary judgment (#67) on February 16, 2006, claiming that NRS 41B.400 shielded it from liability to the Plaintiffs because it paid Sandra Allmaras under the insurance premium in good faith and without actual knowledge that she was prohibited from receiving payment. The Court issued an Order (#125) on June 12, 2006, denying John Hancock's Motion for Summary Judgment because there was no Nevada case law mandating Defendant's interpretation of NRS 41B.400. John Hancock now brings a Motion for Reconsideration of the Court's denial of its original summary judgment motion (#129).

**DISCUSSION**

I.   **Standards of Review**

  A.   **Motion for Reconsideration Standard**

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *In re AgriBioTech, Inc.*, 319 B.R. 207, 209 (D. Nev. 2004).

  B.   **Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence

shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the party opposing the motion may not rest on the mere allegations or denials of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of a claim or defense at trial, the moving party can meet its initial burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Conversely, when the moving party bears the burden of proof at trial, then it must establish each element of its case at summary judgment.

**II.     Legal Arguments**

John Hancock brings a Motion for Reconsideration claiming that they are protected from liability to the Plaintiffs under NRS 41B.400. This statute provides that

> if a payor . . ., *in good faith*, pays or transfers any property . . . to a beneficiary in accordance with the provisions of a governing instrument, the payor . . . is not liable to another person who alleges that the payment or transfer to the beneficiary violated

Page 3 of  10

> the provisions of this chapter, unless before the payment or transfer, the payor or other third person had *actual knowledge that the beneficiary was prohibited* from acquiring or receiving the property . . . pursuant to the provisions of this chapter.

NRS 41B.400 (emphasis added). John Hancock argues that it is immune from liability to the Plaintiffs because it paid Sandra Allmaras under the life insurance policy in good faith and without actual knowledge of her having killed her husband. The two pertinent sections of the statute in this case are the "good faith" and "actual knowledge" clauses. Nevada courts are yet to interpret exactly what these phrases require. Plaintiffs argue that the threshold question under the statute is whether John Hancock paid Sandra in "good faith," which is a question of fact and not ripe for summary judgment. John Hancock, on the other hand, contends that if the "actual knowledge" clause is interpreted to require actual knowledge that the beneficiary was the killer, as a question of law, then it does not matter whether there is evidence it paid in good faith, and it should therefore be relieved of liability in summary judgment.

John Hancock is admittedly placed in a difficult situation in this matter. If it had waited longer before paying Sandra Allmaras under the policy, then she might have brought suit against them for payment. On the other hand, if, as has happened here, John Hancock did pay Sandra under the policy, then it opened itself up to be sued by future claimants. Be that as it may, summary judgment is not ripe. The Plaintiffs appear to be correct in reading the statute to require a payor to show it paid in "good faith" before it can claim the "actual knowledge" defense. Whether John Hancock paid Sandra in good faith is a question of fact that is not ripe for judgment at this time. Therefore, the Motion for Reconsideration should be denied and discovery should continue.

### A. The "Actual Knowledge" Clause of NRS 41B.400

John Hancock's Motion for Reconsider rests entirely on the "actual knowledge" clause of NRS 41B.400. In its initial Motion for Summary Judgment, and now in its Motion to Reconsider, John Hancock asks the Court to interpret the clause as imposing liability only when a payor actually knew that the beneficiary was actually the killer before it made the payment. As the Court noted during the May 8, 2006, hearing on the issue, there is no Nevada case law interpreting the statute and it is open to other reasonable interpretations. John Hancock now brings evidence from the legislative history and other jurisdictions to support its interpretation of "actual knowledge" and asks the Court to reconsider its ruling regarding the Motion for Summary Judgment.

The legislative history to NRS 42B.400 is more or less ambiguous, providing quotes to support both John Hancock and the Plaintiffs' desired interpretations. For instance, while discussing the meaning of "actual knowledge," Senator Wiener asked a life insurance lobbyist (presumably responsible for helping draft the bill) if there is a distinction between "actual knowledge" and "knowledge." The lobbyist commented there was, and then Brad Wilkerson, Committee Counsel, responded that "'actual knowledge' is different from what would be referred to as 'constructive knowledge,' if a person has reason to know something, but does not actually know it." *Hearing on A.B. 159, Before Senate Comm. on Judiciary* (Nv. March 5, 1999). This remark supports John Hancock's more restrictive interpretation of "actual knowledge," as it differentiates clearly between "actual" and "constructive" knowledge. But, as the Plaintiffs point out, immediately after Counsel Wilkerson's comment,

Chairman James "suggested that the language should probably be 'knowledge' or 'reason to know,'" and the lobbyist responded that he was willing to go with either construction. *Id.*

These statements lend support for both a stricter actual knowledge standard and a broader constructive knowledge standard. But, despite this seeming ambiguity in the legislative history, the plain language of the statute should control. The legislature rejected Chairman James' suggestion and chose the words "actual knowledge" for the enacted statute, with apparent clarity regarding their meaning as opposed to "knowledge" or "constructive knowledge." The legislative history should not be used to contravene the unambiguous plain language.

Analogous case law from other jurisdictions also supports John Hancock's interpretation of "actual knowledge." For example, California requires a higher standard of notice for "actual knowledge" than for "constructive knowledge." The California Civil Code defines actual notice" as "express information of a fact," and "constructive notice" as information "imputed by law." West's Ann. Cal. Civ. Code § 18(1) and (2). Constructive notice is obtained when a person "has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact." *Gates Rubber Co. v. Ulman*, 214 Cal. App. 3d 36, 365 (Cal. App. 2d 1989).

In a factually similar case in Illinois, an action was brought against a life insurance company for negligently issuing a policy based upon an application by a beneficiary who claimed to be the insured's child and who allegedly later murdered the insured. *Bajwa v. Metro. Life Ins. Co.*, 776 N.E.2d 609 (Ill. App. Ct. 2002). The plaintiff claimed that the defendant had actual knowledge that the beneficiary intended to murder the named insured as

soon as the policy was issued in order to collect the benefits. The court granted summary judgment for the insurance company, noting that although there was sufficient evidence "to put Met Life on notice that further inquiry was required," "[t]he fact that Met Life should have noticed and followed up on these issues does not establish that Met Life had actual knowledge of the information alleged by Plaintiff." *Id.* at 628. Similarly, John Hancock contends that while it might have been on notice that Sandra was being investigated for her husband's murder, it did not possess actual knowledge of any murder and should thus be freed of any liability for the distribution.

John Hancock contends that following the plain language of the statute and analogous case law, it clearly lacked "actual knowledge" that Sandra Allmaras was the killer. To prove lack of actual knowledge, John Hancock points out that: (1) it did not pay Sandra until more than year after her claim was filed; (2) she has not been criminally charged with any involvement in her husband's death; (3) no party had brought a civil claim against Sandra prior to the time the insurance proceeds were distributed; (4) no competing claims were filed on the insurance proceeds before the distribution; and (5) it closely tracked the police investigation of Sandra and did not pay on the claim until it was assured that no criminal charges were imminent or pending. It is clear from these facts that John Hancock did not possess actual knowledge that Sandra killed her husband.

John Hancock appears to have successfully argued that NRS 41B.400 requires "actual," as opposed to mere "constructive," knowledge, and that it did not possess actual knowledge that Sandra Allmaras killed her husband. But, it fails to persuasively articulate what exactly the payor must not have actual knowledge *of* to avoid liability under the statute.

John Hancock assumes that if "actual knowledge" is interpreted its way, then it should avoid liability so long as it did not possess actual knowledge that Sandra Allmaras was the killer prior to issuing payment on the policy. But, as the Court noted in the May 8, 2006, hearing, the statute is also open to the interpretation that John Hancock could be held liable if it had actual knowledge that Sandra was being *investigated* for killing her husband when it made payment. The statute states that a payor is not liable if it did not have "actual knowledge that the beneficiary *was prohibited from acquiring or receiving the property . . . pursuant to the provisions of this chapter*." NRS 41B.400 (emphasis added). The statute, and Nevada case law, does not specify whether the payor must not have actual knowledge that the beneficiary actually killed or whether they are just suspected of having killed.

A reasonable interpretation of the statute is that it requires only a showing that John Hancock knew that Sandra was accused of the killing to bar the defense. The Defendant has not met its burden in persuading the Court to reverse its earlier ruling.  Summary judgment is clearly not ripe as John Hancock admits that it was aware of the investigation when it paid Sandra.  Further investigation is needed to determine how aware John Hancock was of the investigation, what steps it took to monitor the investigation, whether it paid Plaintiff in good faith, and so forth.

 B.     The "Good Faith" Clause of NRS 41B.400

Plaintiffs also argue that it might not even be necessary to determine what exactly the Defendant must not have had actual knowledge of because the statute requires that John Hancock must *first* show that it paid in good faith before it can claim defense under lack of actual knowledge. Again, the statute provides that: "if a payor . . . in good faith, pays a

beneficiary," then the payor is not liable to another person unless it had actual knowledge that the beneficiary was prohibited from receiving prior to the payment. NRS 41B.400. In using the conditional "if," the statute seems to first require a showing that the payment was made in good faith before determining whether there was actual knowledge. Therefore, John Hancock must demonstrate that it paid in good faith before it can succeed in summary judgment. This is a question of fact that is not ripe for summary judgment unless there remain no genuine issues of material fact for further discovery and trial.

John Hancock has not sufficiently shown that it issued the insurance proceeds to Sandra in good faith under Rule 56. Other jurisdictions have consistently held that payment in good faith requires a proof that the insurance company conducted "a reasonable and prudent prepayment investigation when the company is aware of suspicious circumstances involving the beneficiary in the death of the insured." *Harper v. Prudential Ins. Co.*, 662 P.2d 1264, 1273, 233 Kan. 358, 370 (Kan. 1983). *See also Lunsford v. Western States Life Inc.*, 908 P.2d 79, 86 (Colo. 1995) ("if an insurer is on notice of facts suggesting that the primary beneficiary is not entitled to disbursement of policy proceeds, the insurer has a duty to make a reasonable inquiry and to withhold payment until its suspicion is dispelled."); *In re Estate of Thompson*, 426 N.E.2d 1, 3, 99 Ill. App. 3d 303 (Ill. 1981) (holding that the good faith standard is violated when insurers fail to pursue a reasonable investigation). The sufficiency of an insurance company's investigation in such circumstances is a question of fact.

In this case, a genuine issue of material fact exists as to whether John Hancock properly investigated Sandra Allmaras' involvement in her husband's murder before it distributed payment, especially considering its admission that it knew about and tracked the

police's investigation of her. John Hancock claims the present factual record clearly establishes that it paid in good faith because: (1) it delayed payment for over a year to track the police investigation; (2) no criminal charges were ever filed against Sandra; and (3) no one brought a civil claim against Sandra or the insurance proceeds prior to the payment. However, more information is needed regarding the nature of John Hancock's independent investigation into Sandra's qualification to receive payment under NRS 41B. Its awareness of the police's continuing investigation against Sandra creates a question of fact regarding whether John Hancock made payment in good faith under the statute. Accordingly, summary judgment is not appropriate and discovery should continue.

## CONCLUSION

Therefore, IT IS HEREBY ORDERED that Defendant John Hancock's Motion for Reconsideration (#129) is *denied*.  Genuine issues of material fact remain regarding whether its payment to Sandra Allmaras was made in good faith and without actual knowledge.

DATED: January 5, 2007.

                                                                                       ROBERT C. JONES
                                                                           UNITED STATES DISTRICT JUDGE